# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIRST-CITIZENS BANK & TRUST COMPANY,<br><br>　　　Plaintiff,<br><br>v.<br><br>MICHAEL ONORATO and CIBC PRIVATE WEALTH ADVISORS, INC.<br><br>　　　Defendants. | Civil Action No.: 1:25-cv-11331-DJC |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendants Michael Onorato ("Mr. Onorato") and CIBC Private Wealth Advisors ("CIBC") (collectively, "Defendants") submit this Memorandum of Law in Opposition to First-Citizens Bank & Trust Company's Motion For A Preliminary Injunction [Doc. No. 2] ("Motion"). In support of its Opposition, Defendants also submit the attached Declarations of Michael Onorato ("Onorato Decl.") and Richard Mullaney ("Mullaney Decl.").

Mr. Onorato's clients trust in him to manage their money and execute transactions promptly. While at Plaintiff, he worked with a team of employees to service these clients. Mr. Onorato is one of the last of his team of financial services employees to leave First Citizens. Several of them previously joined CIBC. None of the prior "leavers" currently employed by CIBC are still bound by any customer non-solicitation restrictions with Plaintiff—they are free to solicit any and all clients they used to work with at First Citizens. Plaintiff wants to stop this lawful solicitation by trying to bootstrap Mr. Onorato's alleged restrictions into a broader restriction on its former employees at CIBC, and incredibly, on its competitor CIBC itself.

The Court should deny Plaintiff's Motion because Plaintiff fails to meet any of the elements for preliminary injunctive relief. Plaintiff's entire case is built on mere speculation, conjecture, and assumptions based on emails sent to Mr. Onorato's ***deactivated*** email at Plaintiff during his garden leave period. Further, Plaintiff has failed to prove that its agreement with Mr. Onorato is enforceable, because by statute California invalidated all non-compete agreements, including non-solicitation agreements, for California companies (like Silicon Valley Bank, which employed Mr. Onorato prior to Plaintiff), regardless of where the employee lived or worked. In contrast to the lack of evidence on Plaintiff's side, Defendants provide sworn declarations stating they have not engaged in the alleged unlawful behaviors. Plaintiff's failure to show a likelihood of success on the merits of any of its claims should result in denial of its motion.

Furthermore, Plaintiff argues in a conclusory way that it will suffer irreparable harm but has not identified any ***future*** harm that will occur if the Court denies this Motion, as it should.  The alleged monetary harm at issue is calculable and not irreparable. Plaintiff therefore has also failed to show it will suffer irreparable future damages if the injunction does not enter.

Moreover, the balance of hardships weighs heavily in Defendants' favor and the requested injunction goes against public policy because Plaintiff's requested relief seeks to enjoin CIBC and Mr. Onorato from engaging in ***lawful*** activities with Plaintiff and is nothing more than Plaintiff's attempt to hamstring such legitimate activities. Finally, Plaintiff's Motion should be denied because Plaintiff sat on its rights for months, and did not take the prompt steps required to be entitled to injunctive relief. For all these reasons, as more fully explained below, the Court should deny Plaintiff's Motion.

## I.    <u>RELEVANT FACTUAL BACKGROUND.[1]</u>

Mr. Onorato began working for BP Wealth Management, LLC, a subsidiary of Boston Private Financial Holding, Inc. ("Boston Private") in or about February 2015. Onorato Decl. at ¶ 3. Mr. Onorato signed a Non-Solicitation and Confidentiality Agreement ("Non-Solicitation Agreement") with Boston Private on or around May 2, 2021. *Id.* at ¶ 4. In or around June 2021, Silicon Valley Bank ("SVB"), a California incorporated and headquartered entity, acquired Boston Private, and the two entities merged. Then, in or around March 2023, as a result of SVB's highly publicized collapse, Mr. Onorato worked for a "bridge bank" until Plaintiff, through an agreement that Defendants are not privy to, acquired at least a portion of SVB. *Id.* at ¶ 6. Mr. Onorato did not execute a separate non-solicitation or confidentiality agreement with Plaintiff. *Id.* at ¶ 8. The only agreement he has is the Non-Solicitation Agreement between him and Boston Private. *Id.* at ¶ 4.

While employed by Boston Private and its successors, Mr. Mullaney was Mr. Onorato's associate for approximately five years and his advisory partner for another five years. *Id.* at ¶ 9. Mr. Mullaney and Mr. Onorato shared many of the same clients and Mr. Mullaney had access to all their identities and contact information, as well as knowledge of their assets, financial needs and objectives. *Id.* at ¶ 10. Mr. Mullaney resigned from his position and joined CIBC in January 2024 and his own non-solicitation restrictions expired months ago. Mullaney Decl. at ¶¶ 8, 10.

In or about December 2024, Mr. Onorato provided Plaintiff with 90-days' notice of his resignation. Onorato Decl. at ¶ 11. During the garden leave period, Mr. Onorato went to Florida, his access to his email and other company resources was shut off by Plaintiff. *Id.* at ¶ 12-13. During this time period, he did not reach out to his clients to let them know he had resigned and, if his clients reached out to him, he told them that "changes are coming" or words to that effect. *Id.* at

---

[1] Defendants will discuss additional pertinent facts below.

¶14. When Mr. Onorato left his position with Plaintiff, he did not take Plaintiff's confidential information or trade secrets with him. *Id.* at ¶ 15.

## II.    ARGUMENT.

With this lawsuit, Plaintiff seeks to rewrite its unenforceable non-solicitation agreement against Mr. Onorato and bind CIBC to it, with additional onerous restrictions for which Plaintiff never provided consideration and to which Defendants did not agree. For the reasons set forth below, the Court should deny Plaintiff's Motion.

### A.    Preliminary Injunction Standard.

A preliminary injunction is an "extraordinary and drastic remedy." *Voice of the Arab World, Inc. v. MDTV Medical News Now, Inc*., 645 F.3d 26, 32 (1st Cir. 2011) (quoting *Munaf v. Green*, 553 U.S. 674, 689-90 (2008)). Under the well-known standard for granting a preliminary injunction, the moving party must show: "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." *NuVasive, Inc. v. Day*, 954 F.3d 439, 443 (1st Cir. 2020). Plaintiff "bears the burden of establishing that these factors weigh in [its] favor." *Esso Std. Oil Co. (Puerto Rico) v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006).

### B.    The Court Should Not Issue A Preliminary Injunction Because First Citizens Has Not Shown A Likelihood Of Success On The Merits Of Its Claims.

The moving party's success on the merits is the "touchstone" of this Court's inquiry. *See e.g., Bray v. Worcester Polytechnic Inst.*, 2021 WL 1989993, at *4 (D. Mass. May 18, 2021). "If the moving party cannot demonstrate that [s]he is likely to succeed in [her] quest, the remaining factors become matters of idle curiosity." *Maine Educ. Ass'n Benefits Trust v. Cioppa*, 695 F.3d 145, 152 (1st Cir. 2012). "To demonstrate likelihood of success on the merits, plaintiffs must show

'more than mere possibility' of success—rather, they must establish a '***strong likelihood***' that they will ultimately prevail.'" *Sindicato Puertorriqueno de Trabajadores v. Fortuno*, 699 F.3d 1, 10 (1st Cir. 2012) (citing *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010)) (emphasis added). Here, the Court should deny Plaintiff's Motion because it has not demonstrated it is likely to succeed on the merits of its claim.

### i.   Plaintiff Cannot Succeed On Its Breach Of Contract Claim Because Plaintiff Has Not Proven A Valid Contract Exists Or That Mr. Onorato Breached It.

To succeed on its claim for breach of contract, Plaintiff must show: (1) there is a valid contract between the parties supported by consideration; (2) Plaintiff was ready, willing, and able to perform; (3) Mr. Onorato breached the contract; and (4) Plaintiff sustained damages as a result of such breach. *Netcracker Tech. Corp. v. Laliberté*, No. 20-11054-RGS, 2020 U.S. Dist. LEXIS 202610, at *15 (D. Mass. Oct. 30, 2020) (quoting *Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013)). Plaintiff has the burden to prove the existence of a contract. *Astellas Inst. for Regenerative Med. v. ImStem Biotechnology, Inc.*, 458 F. Supp. 3d 95, 109 (D. Mass. 2020) (citing *Situation Mgmt. Sys. V. Malouf., Inc.*, 430 Mass. 875, 878 (Mass. 2000)). Plaintiff has neither shown it has a valid contract with Mr. Onorato nor that Mr. Onorato breached such a contract.

#### a.   Plaintiff has not proven it has a valid and enforceable contract with Defendants because California law voided the Non-Solicitation Agreement.

Plaintiff has no reasonable likelihood of success on its breach of contract claim because as a threshold issue, as of January 1, 2022, the Non-Solicitation Agreement is void. *See* Cal. Bus. & Prof. Code sec. 16600.1, 16600.5(d)-(e). On January 1, 2024, the California Legislature enacted Cal. Bus. & Prof. Code sec. 16600.1, which provides:

(a) It shall be unlawful to include a noncompete clause in an employment contract, or to require an employee to enter a noncompete agreement, that does not satisfy an exception in this chapter.

(b) (1) For current employees, and former employees who were employed after January 1, 2022, whose contracts include a noncompete clause . . . the employer shall . . . notify

the employee that the noncompete clause or noncompete agreement is void.[2]

Similarly, Cal. Bus. & Prof. Code § 16600.5 provides:

(a) Any contract that is void under this chapter is unenforceable *regardless of where and when the contract was signed*.

(b) An employer or former employer shall not attempt to enforce a contract that is void under this chapter regardless of whether the contract was signed and the employment was maintained outside of California.

(Emphasis supplied). Employees have a private right of action under § 16600.5 and may recover reasonable attorney's fees and costs. *Id.*[3]

As Plaintiff concedes in its Complaint, Mr. Onorato did not execute the Non-Solicitation Agreement with Plaintiff; he executed the agreement with Boston Private, after it was acquired by SVB in 2021. Doc. No. 1 at ¶¶ 32-33. Then, in 2023, Plaintiff acquired SVB's assets. As Plaintiff concedes, SVB was a California company that employed Mr. Onorato during the § 16600.1 look-back period, i.e., from January 1, 2022 until March 2023. Therefore, pursuant to this new California law, SVB's Non-Solicitation Agreement with Mr. Onorato is void and unenforceable. *Id.* Plaintiff's breach of contract claim thus has no likelihood of success.[4] *See Astellas Inst. for*

---

[2] California Courts have interpreted Cal. Bus. & Prof. Code sec. 16600's use of the word "non-compete" to include "non-solicit" agreements in invalidating such agreements as violations of Cal. Bus. & Prof. Code sec. 17200. *See, e.g., Parsable, Inc. v. Landreth*, No. 22-cv-01741-CRB, 2022 U.S. Dist. LEXIS 241809, at *10 (N.D. Cal. Aug. 5, 2022) ("A non-solicitation clause works a restraint on any former employee 'by restricting who may work alongside them. [citation omitted.] It is therefore void under California law."); *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*, 28 Cal. App. 5th 923, 936-39, 239 Cal. Rptr. 3d 577 (2018) (holding that post-employment non-solicitation provision was "void under section 16600" and emphasizing that even narrow or reasonable restraints on former employees were not allowed).

[3] In light of this statute, and the unenforceability of the Non-Solicitation Agreement, Mr. Onorato intends to bring a counterclaim seeking to invalidate the agreement and recover his reasonable attorneys' fees and costs incurred as a result of Plaintiff's unlawful attempt to enforce the Non-Solicitation Agreement.

[4] In any event, Plaintiff has also failed to prove that the assignment of Mr. Onorato's Non-Solicitation Agreement from SVB to the Federal Deposit Insurance Corporation's bridge bank and, then, to Plaintiff was effective and valid and, thus, has failed to prove it has standing to enforce the agreement. For example, in *Boston Private Wealth LLC v. Cummings, et al.*, the Massachusetts Superior Court denied the plaintiff's motion for preliminary injunction seeking to enforce its former employees' non-solicitation agreements because it had "not demonstrated that it [would] more likely than not succeed in proving that [plaintiff] has standing to enforce those agreements." No. 1584CV01532-BLS2, at 5 (Mass. Sup. Ct. Feb. 24, 2016) (Salinger, J.) (decision attached hereto). The Court held that where the party was not covered by the agreement's definition of "the Company," the plaintiff must prove it had standing to enforce the agreement. *Id.* at 5-7. For this reason too, Plaintiff fails to prove a likelihood of success on the merits of its breach of contract claim.

*Regenerative Med.*, 458 F. Supp. 3d at 109 (citing *Malouf., Inc.*, 430 Mass. at 878).

        **b.** *Plaintiff does not have a valid and enforceable contract with CIBC.*

Plaintiff also contends that CIBC has solicited Plaintiff's clients "despite express contractual obligations prohibiting" such solicitations. This is nonsense. There is no contract between Plaintiff and CIBC. Plaintiff also cannot impute Mr. Onorato's alleged agreement onto CIBC. *Motorsport Eng'g v. Maserati S.P.A.*, 316 F.3d 26, 29 (1st Cir. 2002) (noting that even a "third-party beneficiary, who did not sign the contract, is not liable for either signatory's performance and has no contractual obligations to either"). Thus, Plaintiff cannot demonstrate a likelihood of success on the merits of its claim against CIBC for this additional reason.

        **c.** *Plaintiff has not shown Mr. Onorato breached the Non-Solicitation Agreement.*

Even if Plaintiff could prove it has a valid and enforceable agreement with Mr. Onorato, Plaintiff has failed to show Mr. Onorato breached the Non-Solicitation Agreement. In support of its claim, Plaintiff simply asserts Mr. Onorato breached the Non-Solicitation Agreement in three ways: (1) he notified clients of his resignation and future employment at CIBC; (2) permitted CIBC to discuss his future employment there with Plaintiff's clients; and (3) both directly and indirectly solicited Plaintiff's clients to transfer their accounts to CIBC. *See* Pl.'s Mem. at 11. However, Plaintiff has not provided sufficient evidence in support of these conclusory allegations.

Plaintiff's allegations regarding why Mr. Onorato breached the agreement are all pure conjecture and speculation. Plaintiff alleges that because its clients knew Mr. Onorato was leaving for CIBC, Mr. Onorato must have breached the agreement because "the only way clients could have known about [his] resignation and employment with CIBC is because [he] . . . told them." *See* Compl. at ¶¶ 44-46, 48-52. This is not accurate. Mr. Onorato did not notify clients of his resignation from Plaintiff and future employment at CIBC. *Id.* at ¶ 14. During his garden leave, Mr. Onorato was contacted by clients who were concerned when they attempted without success

to contact him at First Citizens for time-sensitive financial services. In response, he truthfully informed clients who contacted him that he was leaving his employment with Plaintiff's only if directly asked and stated only that he was leaving the company and not where he was going. *Id.* at ¶ 14. Mr. Onorato has a right to maintain his own goodwill with clients, which he has spent decades building, and despite certain provisions in the Non-Solicitation Agreement, Plaintiff cannot force Mr. Onorato to lie to or mislead his clients. *See Frank v. Hightower Holding, LLC*, No. 2484CV02039, 2024 Mass. Super. LEXIS 97, at *13 (Aug. 29, 2024) (holding plaintiff would likely suffer irreparable harm if he were not allowed to continue decades-long client relationships).[5]

Notably, while it is unclear how or whether Plaintiff implemented during Mr. Onorato's garden leave a process for notifying Mr. Onorato's clients of his departure or how clients' efforts to reach him would be handled, Plaintiff does not deny that it informed clients of Mr. Onorato's departure. In the transition process, Plaintiff admits its employees were reaching out to Mr. Onorato's clients to ensure continuity of services; however, Plaintiff does not indicate what exactly its employees were telling Mr. Onorato's clients about Mr. Onorato. Plaintiff has not disclosed this information for one obvious reason: people choose the person they trust with their money carefully and clients were asking questions why Mr. Onorato—a person some had trusted for nearly a decade—was no longer available to service their accounts. *See, e.g.*, *Frank*, 2024 Mass. Super. LEXIS 97, at *13.

Plaintiff also alleges Mr. Onorato breached the Non-Solicitation Agreement because CIBC, including Mr. Mullaney, reached out to certain of Mr. Onorato's clients to solicit their business.

---

[5] *See also Getman v. USI Holdings Corp.*, No. 05CV03286-BLS2, 2005 Mass. Super. LEXIS 407, at *12 (Sept. 1, 2005) ("Nor, if a former client initiates contact with the insurance agent, is it solicitation for the agent to explain in summary terms why he left his former employment and joined his current employer.")

*See* Compl. at ¶¶ 47-48. Mr. Onorato, however, had no control over who CIBC spoke to about his future employment with the company, nor did CIBC have any obligation not to discuss a promising new employee joining its ranks. Mr. Onorato is not responsible for Mr. Mullaney and/or CIBC's communications with potential clients that Mr. Mullaney used to work with while at First Citizens. Even if Mr. Onorato asked CIBC not to announce his prospective employment, it was CIBC's decision to make.

> ## ii. Plaintiff cannot prevail on its breach of fiduciary duty and loyalty claims because Mr. Onorato did not breach his duties, and Plaintiff, therefore, cannot prevail on its aiding and abetting claim against CIBC.[6]

To establish a claim for breach of fiduciary duty and loyalty, Plaintiff must prove that (1) Mr. Onorato had a duty to Plaintiff; (2) Mr. Onorato breached that duty; (3) Plaintiff suffered damages; and (4) Mr. Onorato's breach caused Plaintiff's damages. *See Hanover Ins. Co. v. Sutton,* 46 Mass. App. Ct. 153, 164 (1999). By way of example, employees may secretly prepare to compete with their employer, however, an employee "may not appropriate his employer's trade secrets . . . solicit his employer's customers while still working for his employer . . . or carry away certain information, such a s lists of customers." *Augat, Inc. v. Aegis, Inc.*, 409 Mass. 165, 172-73 (1991).

However, as explained above, Mr. Onorato did not breach his duty to Plaintiff because he did not appropriate Plaintiff's trade secrets (*see also*, § III(B)(iv) *infra*), he did not solicit Plaintiff's

---

[6] Even if Plaintiff could show a likelihood of success on the merits of its breach of duty and loyalty claims or its aiding and abetting claim, Plaintiff still would not be entitled to injunctive relief because such claims are based on past harms that cannot be repeated in the future and can be remedied by monetary damages. *See Roe v. Healey,* 78 F.4th 11, 21 (1st Cir. 2023) ("past harm does not confer standing to seek forward-looking declaratory or injunctive relief unless there is ongoing injury or a sufficient threat that the injury will recur"); *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) (rejecting the argument that defendant might have standing based on past harm from being choked by police, because "[a]bsent a sufficient likelihood that he will again be wronged in a similar way, Lyons [was] no more entitled to an injunction than any other citizen of Los Angeles").

customers to stop doing business with Plaintiff during or after his employment with Plaintiff, and he did not compete with Plaintiff during his employment. Plaintiff's speculative allegations that Mr. Onorato told his clients he had resigned and was going to work at CIBC, and that Mr. Onorato solicited clients to follow him to CIBC, are nothing more than conjecture. As a practical matter, clients were inevitably going to learn that Mr. Onorato had left Plaintiff's employ, would learn Mr. Onorato was at CIBC, and would need to decide whether to move their business, but Plaintiff has not explained how it answered questions about Mr. Onorato's departure or why the clients' accounts were transitioning to a new advisor.

Furthermore, because Plaintiff has failed to prove Mr. Onorato breached his fiduciary duty, Plaintiff cannot prove its aiding and abetting claim against CIBC. A defendant "may be liable for aiding and abetting a tort where (1) a third-party committed the relevant tort; (2) the defendant knew the third-party was committing the tort; and (3) the defendant actively participated in or substantially assisted in the commission of the tort." *Sunco Timber (Kunshan) Co. v. Sun*, No. 22-cv-10833-ADB, 2023 U.S. Dist. LEXIS 41485, at *17 (D. Mass. Mar. 13, 2023) (internal quotations and citations omitted). Plaintiff's claim fails as a matter of law where Mr. Onorato did not commit a separate tort for CIBC to aid and abet. Plaintiff's failure to establish Mr. Onorato's breach of his fiduciary duties is, therefore, fatal to Plaintiff's aiding and abetting claim against CIBC.

Accordingly, Plaintiff has no likelihood of success on the merits of its breach of fiduciary duty and loyalty claim against Mr. Onorato or its aiding and abetting claim against CIBC.

### iii. Plaintiff cannot prevail on its tortious interference with contractual relationships and prospective economic advantage claim.

To state a claim for tortious interference with advantageous business relations/expectancy, Plaintiff must establish that (1) Plaintiff had a contract or business relationship for economic

benefit with a third-party; (2) Defendants knew of that contract or relationship; (3) Defendants intentionally interfered with the contract or relationship through improper motive or means; and (4) Plaintiff's loss of the advantage resulted directly from Defendants' conduct. *See Fafard Real Estate & Dev. Corp. v. Metro-Boston Broadcasting, Inc.*, 345 F. Supp. 2d 147, 154 (D. Mass. 2004); *Swanset Dev. Corp. v. City of Taunton*, 423 Mass. 390, 396 (Mass. 1996). Proof of improper motive or means **beyond the inference itself** is required to establish such a claim. *See Cavicchi v. Koski*, 67 Mass. App. Ct. 654, 657 (2006). Plaintiff cannot meet this burden.

Here, Plaintiff failed to show that Defendants intentionally interfered with Plaintiff's business relationships through improper means. Plaintiff merely alleges Defendants reached out to Mr. Onorato's clients to solicit their business and that Mr. Onorato informed clients that he had resigned. *See* Doc. No. 1 at ¶¶ 44-59. Plaintiff specifically states that Mr. Mullaney a financial advisor at CIBC whose non-solicitation agreement with Plaintiff had expired contacted certain of Plaintiff's clients who then wished to transfer their portfolios to CIBC. Beyond speculation, Plaintiff has not identified any improper means or motive.

Plaintiff argues that Mr. Onorato "must have" informed CIBC of his clients' identities and provided contact information for each client. However, this is mere conjecture and directly contradicted by the sworn declarations of Mr. Onorato and Mr. Mullaney. Mr. Mullaney and Mr. Onorato previously worked together at Plaintiff's predecessor and shared a client base. *See* Mullaney Decl. at ¶ 11. During that time Mr. Mullaney became familiar with Mr. Onorato's clients because they were also Mr. Mullaney's clients. *Id.* at ¶ 11. Mr. Mullaney is no longer bound by his non-solicitation agreement, as he left Plaintiff over a year ago. *Id.* at ¶ 10. Therefore, Mr. Mullaney has every right to solicit clients through legal means, even those who may have a business relationship with Plaintiff and/or Mr. Onorato. Plaintiff's "must have been" theory that

Mr. Onorato colluded with Mr. Mullaney or others at CIBC is purely speculative and thus not sufficient to prove Defendants used improper means to solicit Plaintiff's clients.

Additionally, Plaintiff has also failed to establish that Defendants had some improper motive to solicit Plaintiff's clients. Plaintiff contends that CIBC reaching out to Plaintiff's clients while it still employed Mr. Onorato is enough to prove improper motive. *See* Doc. No. 3 at 15. Plaintiff relies on *Melo-Tone Vending v. Sherry, Inc.*, 39 Mass. App. Ct. 315, 319 (Mass. App. Ct. 1995) for the proposition that "because defendant not only knew of the existing contract but had received a copy of it, the defendant's inducement of the contract violation was itself sufficient to make out the tort." *See* Doc. No. 3 at 15 (quotation marks omitted) (cleaned up). Plaintiff's reliance on *Melo-Tone Vending* is misplaced. There, not only did the defendant induce the breach to a contract it had a copy of, but the inducing company also abetted the breach by paying to have the plaintiff's property ***unlawfully*** removed from the premises and subsidized the breaching party's legal defense when the plaintiff asserted its legal rights. *See* 39 Mass. App. Ct. at 319-20.

Here, Plaintiff has failed to establish Defendants acted with some improper motive. Plaintiff alleges that because CIBC knew of Mr. Onorato's Non-Solicitation Agreement, it should not have been allowed to solicit Plaintiff's clients. It is well established that "[f]or competition and for the rough and tumble of the world of commerce, there is tolerance . . . even though the fallout of that rough and tumble is damage to one of the competitors." *Id.* at 320 (citations omitted).[7] Plaintiff has not presented any evidence that CIBC encouraged Mr. Onorato to violate

---

[7] *See also American Private Line Servs., Inc. v. Eastern Microwave, Inc.*, 980 F.2d 33, 35 (1st Cir. 1992) (serving own financial benefit by offering lower prices constitutes lawful competition and is not improper motive); *Sherman v. Clear Channel Outdoor, Inc.*, 889 F. Supp. 2d 168, 177 (D. Mass. 2012) (acting for own business purposes to defeat competitor's plans is not improper motive); *Am. Paper Recycling*, 707 F. Supp. 2d at 122 ("legitimate advancement of one's own economic interests is never 'improper' [motive]") (citing *Pembroke*, 62 Mass. App. Ct. 34, 815 N.E.2d 241)); *TalentBurst, Inc. v. Collabera, Inc.*, 567 F. Supp. 2d 261, 269 (D. Mass. 2008) ("Advancement of one's economic interest . . . is not an improper motive"); *King v. Driscoll*, 418 Mass. 576, 638 N.E.2d 488, 494-95 (Mass. 1994) ("motivation of personal gain, including financial gain . . . generally is not enough" for improper

his Non-Solicitation Agreement or used improperly obtained information about Plaintiff's clients. Absent such evidence, CIBC is absolutely free to solicit the clients at issue and Plaintiff has not identified any legal support that a new employer cannot solicit clients of a newly hired employee simply because that employee may have a nonsolicit restriction himself. Therefore, Plaintiff clearly does not have a likelihood of success on the merits of its tortious interference claim.

### iv.  Plaintiff will not prevail on its Defend Trade Secrets Act ("DTSA") Claim.

To establish a claim under the DTSA, Plaintiff must prove: "1) the information is a trade secret; 2) the plaintiff took reasonable steps to preserve the secrecy of the information; and 3) the defendant used improper means, in breach of a confidential relationship, to acquire and use the trade secret." *Washington Trust Advisors, Inc. v. Arnold*, 646 F. Supp. 3d 210, 217 (D. Mass. 2022) (citing *Incase Inc. v. Timex Corp.*, 488 F.3d 46, 52 (1st Cir. 2007)). Information is a trade secret if it relates to "a product or service used in, or intended for use in, interstate or foreign commerce . . . and . . . [the] owner has: (i) taken reasonable measures to keep such information secret; and (ii) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *T.H. Glennon Co. v. Monday*, No. 18-30120-WGY, 2020 U.S. Dist. LEXIS 45917, at *39 (D. Mass. Mar. 17, 2020) (citations and quotations omitted).

The Court's inquiry into Plaintiff's likelihood of success should start and end at the last element required to establish the claim: as stated above, Mr. Onorato did not use improper means

---

interference); *United Truck*, 551 N.E.2d at 24 (no improper motive where defendant's "apparent motives were to benefit his customers and himself financially"); *Bourque v. Cape Southport Assocs., LLC*, 60 Mass. App. Ct. 271, 800 N.E.2d 1077, 1082 (Mass. App. Ct. 2004) (no improper interference where "[t]here is no indication that the defendant acted for any purpose other than the protection of its own business interests," even if "plaintiff's business opportunity may have been affected indirectly").

to acquire Plaintiff's client list or use such list to solicit Plaintiff's clients. *See* Onorato Decl. at ¶ 15. Mr. Onorato did not improperly use Plaintiff's client list to solicit Plaintiff's clients. *Id.* at ¶ 12-15. However, even if he did, that would not be enough to establish Plaintiff's DTSA claim. *See Arnold*, 646 F. Supp. 3d at 217 ("[Plaintiff] does not explain how client solicitation meets the statutory definition of trade secret misappropriation. Nor is the Court persuaded that the Individual Defendants may be liable simply because they retain information about [Plaintiff's] clients in their memories; such information was not obtained through improper means."); *see also* 18 U.S.C. § 1839(6)(A) (defining "improper means" as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means").

Plaintiff fails to offer any evidence showing Mr. Onorato misappropriated Plaintiff's client list, and Mr. Onorato has sworn in his Declaration that he did not take any such information with him when he left Plaintiff. *See* Onorato Decl. at ¶ 15. Notably, Plaintiff has not even asserted Mr. Onorato accessed Plaintiff's client list during his garden leave, likely because he could not have done so in light of Plaintiff shutting off his access to its network. *See id.* at ¶ 12. Plaintiff's argument is nothing more than pure speculation and conjecture. Most of all, Plaintiff's version of events is plainly false. Therefore, Plaintiff's claim under the DTSA fails.

Moreover, Plaintiff's claim also fails because Plaintiff's client list is not a "trade secret" as it does not contain the required non-public information. Plaintiff alleges its client list is a trade secret because it contains client "names and contact information." While Massachusetts Courts have held that in certain specific scenarios client lists may be trade secrets, those customer lists often contain additional non-public information beyond a client's name and contact information. *See, e.g.*, *EMC Corp. v. Pure Storage, Inc.*, No. 13-12789-JGD, 2016 U.S. Dist. LEXIS 189511,

at *18 (D. Mass. Aug. 19, 2016) ("The documents at issue do not merely include lists of clients. At least some of the documents include confidential customer-related information including customer lists and contact information, pricing guidelines, historical purchasing information, and customers business needs/preferences. This type of information is routinely given trade secret protection.") (citations and quotations omitted)); *Hertz v. Luzenac Group*, 576 F.3d 1103, 1115 (10th Cir. 2009) (denying motion for summary judgment because customer list contained non-public contact information). Furthermore, Plaintiff has not established that Defendants could not easily obtain the information in the customer list by independent and legal means. Plaintiff also ignores the fact that Mr. Mullaney was aware of the contact information of clients he formerly worked with. *See* Mullaney Decl. at ¶ 11. Plaintiff simply has not met its burden to establish its customer list containing names and contact information meets the standard of a trade secret. Therefore, Plaintiff is unlikely to succeed on its DTSA claim.

Simply put, Plaintiff has failed to prove a likelihood of success on any of its claims. Moreover, even if Plaintiff had established a likelihood of success on its claims, an injunction is not the proper relief to remedy Plaintiff's alleged damages because Plaintiff has failed to establish the alleged unlawful acts have some future impact or a likelihood that Defendants will act unlawfully in the future. *See Lopez v. Garriga*, 917 F.2d 63, 67-68 (1st Cir. 1990) ("an injunction-seeker must show either that some past unlawful conduct has continuing impact into the future . . . or else he must show a likelihood of future unlawful conduct on the defendant's part" (citations omitted)). Therefore, for all the foregoing reasons, Plaintiff has failed to establish a likelihood of success on the merits of ***any*** of its claims, and the Court should thus deny Plaintiff's Motion.

### C. Plaintiff Will Not Suffer Any Harm, Let Alone Irreparable Harm, Without Injunctive Relief.

"Irreparable injury" in the preliminary injunction context means an injury a plaintiff cannot

be adequately compensated for either by a later-issued injunction, after a full adjudication on the merits, or by a later-issued damages remedy. *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 76 (1st Cir. 2005) (citations omitted). Plaintiff asserts it will suffer irreparable harm in the absence of the requested injunction because its clients may leave Plaintiff and decide they trust CIBC to make better decisions regarding their money. Plaintiff contends that "Defendants improper solicitation" of Plaintiff's clients has caused certain clients to leave and establishes a "risk of future loss of client goodwill and confidential information that cannot be easily quantified." Doc. No. 3 at 18. There is no support for these claims.

Plaintiff's argument boils down to nothing more than the assertion that Plaintiff will lose business if the injunction does not enter because CIBC will be allowed to compete with Plaintiff in the market. Plaintiff's argument fails, however, because "[t]he mere existence of competition is not irreparable harm, in the absence of substantiation of severe economic impact." *Canterbury Liquors & Pantry v. Sullivan*, 999 F. Supp. 144, 150 (D. Mass. 1998). Plaintiff has not proven severe economic impact, and, in any event, loss of business is "easily compensated with a monetary award for the amount of business lost." *Steelcraft, Inc. v. Mobi Med., LLC*, Nos. 104931, 08-1934, 2008 Mass. Super. LEXIS 373, at *8 (Nov. 10, 2008). As such, the loss that Plaintiff alleges is essentially "monetary loss, which is not enough to establish irreparable harm." *Id.*

To the extent Plaintiff argues it will suffer a loss of client goodwill and, thus, irreparable harm, this argument also fails. In support of this argument, Plaintiff relies on *Bear, Stearns & Co. v. Sharon*, 550 F. Supp. 2d 174, 178 (D. Mass. 2008) for the proposition that "[D]amage to client relationships and customer good will has been held to be 'irreparable harm' under Massachusetts law." Doc. No. 3 at 18. However, Plaintiff's quote is misleading. What the Court actually said is:

> Although damage to client relationships and customer goodwill has been held to be "irreparable harm" under Massachusetts law, *e.g. All Stainless, Inc. v. Colby,* 364

Mass. 773, 308 N.E.2d 481 (1974), the financial services industry is uniquely skilled at computing the economic value of a given client.

*Sharon*, 550 F. Supp at 178. This underscores the futility of Plaintiff's argument. As the parties are in the financial services industry, Plaintiff can easily calculate the value of any clients who have allegedly left for CIBC. Thus, Plaintiff's nonexistent harm is not "irreparable."

Furthermore, Plaintiff also asserts that it will suffer "irreparable harm" because the "risk of future loss of client goodwill and confidential information [] cannot be easily quantified." Doc. No. 3 at 18. However, damage is not irreparable just because it may be difficult to calculate. *Sharon*, 550 F. Supp. at 178 ("difficulty in calculating damages does not render them irreparable").

Finally, Plaintiff cannot claim irreparable harm from Defendants alleged actions because (1) Defendants do not possess Plaintiff's alleged confidential information; and (2) Defendants have not used Plaintiff's alleged confidential information to contact Plaintiff's clients. Therefore, Plaintiff has failed to establish it will suffer any harm at all, let alone irreparable harm, if an injunction does not enter.

**D.  The Balance Of Hardships Weighs Heavily In Defendants' Favor.**

"The inquiry concerning the balance of harms should not focus on the raw amount of irreparable harm each party might suffer, but rather the risk of such harm in light of the party's chance of success on the merits." *Exeter Group, Inc. v. Sivan*, Nos. 88407, 2005-0628-BLS2, 2005 Mass. Super. LEXIS 257, at *16 (Mass. Sup. Ct. Mar. 22, 2005) (citing *Packaging Indus. Group, Inc. v. Cheney*, 380 Mass. 609, 617 (1980)). Here, the balance of harms weighs strongly in Defendants' favor. As explained above, there is absolutely no evidence that Plaintiff will suffer irreparable harm if this injunction does not issue. Moreover, Plaintiff's alleged goodwill and confidential information, to the extent they exist, are not at risk without the issuance of the injunction.

To the contrary, if an injunction enters, Defendants will be barred from soliciting business with anyone Mr. Onorato serviced or learned of while working for Plaintiff. This includes restricting CIBC's other employees from contacting or soliciting Plaintiff's current or prospective clients, even if CIBC learned of the client from sources other than Mr. Onorato.

Plaintiff's requested injunction is nothing more than a veiled attempt to prevent lawful competition within the financial services industry. Accordingly, the balance of hardships weighs heavily in Defendants' favor, and the Court should deny Plaintiff's Motion.

**E. An Injunction Goes Against The Public Interest Because The Requested Injunctive Relief Improperly Seeks To Restrain Trade And Commerce, Impose Restraints For Which Plaintiff Neither Bargained Nor Provided Consideration, And That Is Against The Public Policy.**

While Massachusetts Courts recognize the public has a strong interest in enforcing reasonable restrictive covenants, Plaintiff seeks relief for which it did not bargain or pay consideration for. Plaintiff contends without any evidence whatsoever that the Court should enjoin CIBC and Mr. Onorato because Mr. Onorato signed a Non-Solicitation Agreement while employed at Plaintiff's predecessor company and allegedly breached the agreement. As explained *supra*, many of Plaintiff's requests for injunctive relief bear no relationship to the language of the Non-Solicitation Agreement. For instance, Plaintiff seeks to enjoin "***Defendants***" for a period of "one (1) year from the date of this [Court's] Order" from "engaging in the solicitation of":

> (i) any client of First Citizens that Onorato serviced during his employment at First Citizens (or any of its predecessors), or about whom Onorato learned any Confidential Information (as that term is defined in Onorato's Non-Solicitation and Confidentiality Agreement) during his employment with First Citizens (or any of its predecessors);
> (ii) any prospective client of First Citizens with whom Onorato communicated during his employment at First Citizens (or any of its predecessors), or about whom Onorato learned any Confidential Information (as that term is defined in Onorato's Non-Solicitation and Confidentiality Agreement) during his employment with First Citizens (or an of its predecessors).

Doc. No. 2-1 at 1-2. This request conflicts with applicable case law.[8]

Plaintiff has not raised—because it does not have any basis to raise—a breach of contract claim against CIBC. Instead, Plaintiff's claims against CIBC arise out of Plaintiff's breach of contract claim against Mr. Onorato. The Court should not enforce a contract against CIBC where CIBC is not a party to the agreement. While courts regularly direct an individual to comply with the reasonable parameters of an agreement that is narrowly tailed to protect the former employer's legitimate business interests and simultaneously enjoin a new employer to ensure that the departing employee complies with their legitimate contractual obligations, courts merely enjoin those new employers from inducing the employee to violate the agreement; they do not add new restrictions upon a non-party to a contract. *See Alexander & Alexander, Inc. v. Danahy*, 21 Mass. App. Ct. 488, 499-500 (1986). Plaintiff has failed to provide any basis whatsoever for the extraordinary relief that it seeks against CIBC, a non-party to the agreement. *See* § III(B)(i)(b), *supra*.

Plaintiff's request that the Court enjoin Defendants for "one (1) from the date of this [Court's] Order" is even more overreaching. With this request, Plaintiff seeks protections it failed to obtain by contracting with its own employee and to expand the effective period of the Non-Solicitation Agreement by multiple months. This cannot be allowed. As early as January 28, 2025, Plaintiff suspected Mr. Onorato violated the Non-Solicitation Agreement. Yet Plaintiff sat on its rights for nearly four months before bringing suit. This Court should not allow Plaintiff to benefit from this delay and extend the Non-Solicitation Agreement beyond the period Plaintiff bargained for. Plaintiff's strategic delay is plainly an effort to have this Court impose obligations on its

---

[8] In this respect, Plaintiff's preliminary injunction is nothing more than an improper attempt to restrain trade and commerce and to use this litigation to obtain protections Plaintiff failed to pay consideration for and restrict Defendants from lawfully competing in one of Plaintiff's many markets, most notably the Boston area. Although the request is outrageous in every respect, it is especially overreaching as to Mr. Mullaney because he is no longer bound by the same Non-Solicitation Agreement Plaintiff claims binds Mr. Onorato after he left Plaintiff's predecessor, and he shared Mr. Onorato's client list while they worked together.

competitor that (1) Plaintiff did not bargain for and (2) prevent fair competition in the Boston-area market.

Furthermore, Plaintiff's requested relief goes against public policy. Massachusetts Courts have recognized that non-solicitation agreements in the financial services industry unfairly burden and restrict an advisor's clients' choice of who will handle their money. *See Fidelity Brokerage Servs., LLC v. Callinan*, 35 Mass. L. Rep. 450, at *14-15 (Mass. Super. Ct. Feb. 7, 2019) (Davis, J.); *Smith Barney Div. of Citigroup Glob. Markets Inc. v. Griffin*, 23 Mass. L. Rep. 457, at *3-4 (Mass. Super. Ct. Jan. 23, 2008) (Gants, J.) ("the enforcement of the confidentiality and non-solicitation provisions [of an employment contract] punishes the clients of the departing financial advisors, many of whom have relied upon the advice of their financial advisor for many years in deciding how to invest their life savings"). If Plaintiff's requested injunction enters, then Defendants will be barred from servicing Mr. Onorato's former clients lest Defendants run afoul of the injunction. That is simply unfair to those clients who would choose Mr. Onorato over Plaintiff and against Massachusetts' public policy.

Accordingly, the Court should deny Plaintiff's Motion.

### III.     CONCLUSION.

For the foregoing reasons, Plaintiff has not met its burden to prove it is entitled to the "extraordinary remedy" of an injunction, and the Court should deny Plaintiff's Motion.

June 6, 2025

Respectfully Submitted,

MICHAEL ONORATO and CIBC PRIVATE WEALTH ADVISORS, INC.,

By their attorneys,

*/s/ Erik J. Winton*
Erik J. Winton (BBO# 600743)
Stephen T. Paterniti (BBO# 564860)
Garrett A.D. Gee (BBO# 708219)
Jackson Lewis, P.C.
75 Park Plaza, 4th Floor
Boston, Massachusetts 02116
TELE: (617) 367-0025
Erik.Winton@jacksonlewis.com
Stephen.Paterniti@jacksonlewis.com
Garrett.Gee@jacksonlewis.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2025, a true copy of the above document was served the following counsel of record through the Court's electronic filing system:

Attorneys for Plaintiff:

Jeffrey Shapiro, Esq.
Edward Winsman, Esq.
Fisher & Phillips LLP
200 State Street, Ste 7th Floor
Boston, MA 02109
Tel: (617) 532-5891
jsshapiro@fisherphillips.com
ewinsman@fisherphillips.com

*/s/ Erik J. Winton*
Jackson Lewis P.C.

4919-1167-4442, v. 6